UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

United States of America

v.                                                          Crim. No. 5:15–cr–79-1

Orlando Vergara

## REPORT AND RECOMMENDATION
(Docs. 77, 79)

Orlando Vergara, proceeding *pro se*, has moved pursuant to 28 U.S.C. § 2255 to vacate, set aside, or correct his federal sentence. (Doc. 77.) On September 12, 2016, Mr. Vergara pleaded guilty to one count of possession with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1). Mr. Vergara and the government entered into a plea agreement pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C) providing for a 40-month sentence. (Doc. 48 at 4, ¶ 13.)

At the time of sentencing, Mr. Vergara's criminal history included two drug trafficking convictions sustained in Massachusetts Superior Court. This conviction history resulted in his designation as a career offender under the federal Sentencing Guidelines and a corresponding Guidelines imprisonment range of 151–188 months. On January 11, 2017, Judge Crawford sentenced Mr. Vergara to a 40-month term of imprisonment and a 5-year term of supervised release. (Minute Entry, ECF No. 70; Doc. 71.) Due to the misconduct of two Commonwealth of Massachusetts forensic chemists affecting numerous drug convictions in that jurisdiction, Mr. Vergara's two Massachusetts drug trafficking convictions were subsequently vacated and dismissed, one in April 2018 and the other in March 2021.

Mr. Vergara began his term of supervised release on May 21, 2018, and supervision was eventually transferred to the District of Massachusetts in 2019.  Mr. Vergara's supervised release was revoked in Massachusetts in March 2022 and he was sentenced to a 24-month term of imprisonment with no supervised release to follow.  The procedural history of the supervised release violation proceedings is described more fully below.  Mr. Vergara filed this § 2255 Motion in May 2022 requesting that the Court "resentence [him] to 3 year[s] supervised release and release" him.  (Doc. 77 at 12.)  The basis for this request is unclear given that two months before he filed the § 2255 Motion the District Court in Massachusetts did not impose an additional term of supervised release to follow his imprisonment on the violation.  Nevertheless, the Court has liberally construed Mr. Vergara's Motion to address all the claims he may be raising.

The government has filed a Motion to Dismiss the § 2255 Motion on statute of limitations grounds.  For the reasons set forth below, I recommend that the government's Motion to Dismiss (Doc. 79) be GRANTED and Mr. Vergara's § 2255 Motion (Doc. 77) be DISMISSED as untimely.

**Factual and Procedural History**

I.     **The Charge and Plea Agreement**

On June 5, 2015, the grand jury in Vermont returned an Indictment charging Mr. Vergara and a codefendant with possession with intent to distribute cocaine, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2.  (Doc. 13.)  Mr. Vergara pleaded guilty to the charge on September 12, 2016 pursuant to a Rule 11(c)(1)(C) agreement providing for a 40-month term of imprisonment.  (Doc. 48; Minute Entry, ECF No. 50.)

In relevant part, the plea agreement specified the applicable range of supervised release at sentencing:

> ORLANDO VERGARA understands, agrees and has had explained to him by counsel that the Court may impose the following sentence on his plea: up to 20 years of imprisonment, pursuant to 21 U.S.C. § 841(b)(l)(C); up to lifetime supervised release with a mandatory minimum of 3 years, pursuant to 21 U.S.C. § 84l(b)(l)(C); up to a $ 1,000,000 fine, pursuant to 21 U.S.C. § 84l(b)(l)(C); and a $100 special assessment.

(Doc. 48 at 1, ¶ 2.)

## II.     The Presentence Report and Sentencing

The Presentence Report (PSR) calculated Mr. Vergara's base offense level to be 22. (PSR at 8, ¶ 41); s*ee* USSG §§ 2D1.1, 1B1.3.  He received a two-level increase because he was an organizer, leader, manager, or supervisor of the offense.  (PSR at 10, ¶ 44); *see* USSG § 3B1.1(c).  Mr. Vergara was designated a career offender under the Guidelines based on two prior controlled substances convictions in Massachusetts state court: (1) Possession with Intent to Distribute Cocaine, Middlesex Superior Court Dkt. No. 1081CR00050–001; and (2) Possession with Intent to Distribute Cocaine, Hampden Superior Court, Dkt. No. 1179CR00042.  (PSR at 10, ¶¶ 47, n.2, 54, 56.)  After application of the career offender Guideline provision, the adjusted offense level was 32.  (PSR at 10, ¶ 47); *see* USSG § 4B1.1.  The offense level was reduced by three levels based on acceptance of responsibility.  (PSR at 10, ¶¶ 48–49); *see* USSG §§ 3E1.1(a) and (b).  The career offender designation resulted in Mr. Vergara's placement in Criminal History Category (CHC) VI.  (PSR at 14, ¶ 64); *see* USSG § 4B1.1(b).  A total offense level of 29 in CHC VI yielded a Guideline imprisonment range of 151–188 months.  (PSR at 19, ¶ 98); *see* USSG Chapter 5, Part A.

On January 11, 2017, Judge Crawford imposed a 40-month term of imprisonment and 5 years of supervised release.  (Minute Entry, ECF No. 70; Doc. 71.)  Mr. Vergara did not appeal his conviction and sentence.

### III.    Transfer of Mr. Vergara's Supervision and Violation Proceedings in the District of Massachusetts

Mr. Vergara began supervised release on May 21, 2018.  (*See* Doc. 76.)  Supervision was subsequently transferred from the District of Vermont to the District of Massachusetts effective February 22, 2019.  (*Id.*)  *See United States v. Vergara*, No. 3:19-cr-30012, ECF Nos. 25, 33 (D. Mass. 2019).  The docket also reflects that Mr. Vergara's supervised release was revoked on March 21, 2022 based in part on a charge of cocaine, heroin, and fentanyl trafficking.  *Id.*, ECF No. 56.  After Mr. Vergara admitted to the violations in the District of Massachusetts, U.S. District Judge Mark Mastroianni revoked Mr. Vergara's supervised release conditions and sentenced him to 24 months' imprisonment with no term of supervision to follow.  *Id.*, ECF No. 58.

On April 4, 2022, Mr. Vergara filed a letter that in part asked to withdraw his admissions to the drug trafficking charges for which he had just been sentenced.  In the letter, Mr. Vergara also noted that the criminal history category the court applied at the March 21, 2022 supervised release sentencing was incorrect.  He specifically argued that the vacated Massachusetts convictions meant that he was no longer a career offender in CHC VI with a Guidelines range of 33–41 months.  Rather, he was now in CHC II with a corresponding Guidelines range of 15–21 months.  *Id.*, ECF Nos. 59, 69.

On July 26, 2022, Judge Mastroianni concluded that the 24-month sentence he previously imposed remained adequate and declined to adjust the sentence.  *Id.*, ECF No. 87.  Mr. Vergara appealed his sentence to the First Circuit Court of Appeals.  *US v. Vergara*, No. 22-1611 (1st Cir.

June 27, 2023); *Vergara,* No. 3:19-cr-30012, ECF No. 88. On June 27, 2023, the Court of

Appeals granted the government's motion to vacate and remand for resentencing. *Vergara*, No.

3:19-cr-30012, ECF No. 111. On September 15, 2023, Judge Mastroanni again sentenced

Mr. Vergara to a 24-month term of imprisonment with no supervised release to follow. *Id*., ECF

No. 115.

## IV.    The Scandal Involving Forensic Chemists in Massachusetts and Vacatur of Mr. Vergara's Two Drug Trafficking Convictions

This Court has previously summarized the events surrounding the misconduct of Sonja

Farak, a forensic chemist formerly employed by the Massachusetts State Police. *See United*

*States v. Anderson*, Crim. Action No. 5:11-cr-158, 2019 WL 10371607, at *2–3 (D. Vt. Dec. 4,

2019). Ms. Farak "had been consuming drug reference standards, tampering with police-

submitted drug samples, and otherwise performing work under the influence of drugs." *Id*. at *2.

As a result of Ms. Farak's prosecution and conviction, the Massachusetts Attorney General's

Office issued a report revealing that Ms. Farak's conduct dated back to "late 2004 or early

2005." *Id*. at *3. Defendants affected by Ms. Farak's misconduct subsequently initiated

litigation seeking to vacate their previous Massachusetts convictions. Mr. Vergara's conviction

in Hampden Superior Court for possession with intent to distribute cocaine (PSR at 12, ¶ 56) was

vacated on April 5, 2018 by order of the Massachusetts Supreme Judicial Court (Doc. 79-1 at 3).

Massachusetts authorities also determined that there was misconduct by Annie Dookhan,

a forensic chemist employed by the William A. Hinton State Laboratory Institute to test

controlled substances in relation to state prosecutions. *See Bridgeman v. District Attorney for the*

*Suffolk District*, 67 N.E. 3d 673, 675–76 (2017). Defendants affected by Ms. Dookhan's

misconduct also brought litigation to vacate their convictions. Mr. Vergara's conviction in

Middlesex Superior Court for possession with intent to distribute cocaine (PSR at 11, ¶ 54) was

vacated on March 18, 2021 by order of the Massachusetts Supreme Judicial Court (Doc. 79-2 at 4).

## V.    Section 2255 Motion

On June 6, 2022, this Court docketed Mr. Vergara's Motion Under 28 U.S.C. § 2255. (Doc. 77.)[1]  Mr. Vergara raises the following grounds for relief: (1) this Court lacked jurisdiction to impose a five-year term of supervised release because "[his] charge was considered a Class C felony and due to [his] alleged career criminal status the judge gave [him] 5 years supervised release without the proper paperwork being filed" (*id.* at 4); (2) he should not have received more than 3 years of supervised release "due to the law unless the [prosecutor] filed for [him] to get more supervised release" (*id.* at 5); (3) his "cases [were] vacated," by which Mr. Vergara appears to contend that the vacatur of the Massachusetts convictions no longer caused him to be classified as a career offender and therefore he should have received only three years of supervised release (*id.* at 7, 11); (4) he received ineffective assistance of counsel from attorneys who represented him in the supervised release proceedings in the District of Massachusetts.[2]  For relief, Mr. Vergara requests that the Court "resentence" him "to 3 year[s] supervised release and release [him]." (*Id.* at 12.)

---

[1]  Mr. Vergara signed his Motion on May 28, 2022.  He attests that he placed it in the prison mailing system on May 31, 2022.  (Doc. 77 at 12.)  Because it is not clear that the Motion was actually placed in the prison mail system on May 31, 2022, the Court deems the Motion filed on May 28, 2022.  *United States v. Newton*, No. 5:11-cr-50-1, 2014 WL 348195, at *5 (D. Vt. Jan. 31, 2014) (explaining that if it is unclear when an incarcerated self-represented litigant's document was mailed, the court will assume it is filed "on the day it is signed and dated" (internal quotation marks omitted)).  The government appears to apply a similar deemed filing date.  (Doc. 79 at 2, 20.)

[2]  The Court bases this conclusion on Mr. Vergara's references to proceedings in Springfield, Massachusetts.  *See* Doc. 77 at 10 ("Springfield, MA probation violation was sentenced to the max when my guidelines were 15-21 month[s] and they gave me 24 months.").

## Discussion

### I.    Legal Standards Governing § 2255 Motions

An individual serving a federal sentence in custody may seek to correct that sentence if (1) "the sentence was imposed in violation of the Constitution or laws of the United States," (2) "the court was without jurisdiction to impose such sentence," (3) "the sentence was in excess of the maximum authorized by law," or (4) the sentence "is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). Review under § 2255 is "narrowly limited in order to preserve the finality of criminal sentences and to effect the efficient allocation of judicial resources." *Graziano v. United States*, 83 F.3d 587, 590 (2d Cir. 1996) (internal quotation marks omitted). Generally, claims not raised on direct appeal may not be raised on collateral review unless the defendant establishes "(1) cause for the procedural default and ensuing prejudice, or (2) actual innocence." *United States v. Thorn*, 659 F.3d 227, 231 (2d Cir. 2011). A movant shows cause and prejudice where the "claimed error constituted a fundamental defect which inherently results in a complete miscarriage of justice." *United States v. Addonizio*, 442 U.S. 178, 185 (1979) (internal quotation marks omitted); *see Napoli v. United States*, 45 F.3d 680, 683 (2d Cir. 1995). This high bar for collateral review is intended to "conserve judicial resources and to respect the law's important interest in the finality of judgments." *Massaro v. United States*, 538 U.S. 500, 504 (2003). However, "requiring a criminal defendant to bring ineffective-assistance-of-counsel claims on direct appeal does not promote these objectives," and therefore petitioners may raise ineffective-assistance-of-counsel claims for the first time in a § 2255 motion. *Id.*

### II.    This Court's Jurisdiction Over Mr. Vergara's § 2255 Motion

The government raises a threshold issue regarding whether this Court has jurisdiction over the § 2255 Motion given that Mr. Vergara's supervised release was transferred to the

District of Massachusetts after sentencing.  (Doc. 79 at 12–13.)  The Court concludes that

jurisdiction is proper in this District over Mr. Vergara's challenge to the length of the term of

supervised release imposed at sentencing.  First, the exercise of jurisdiction by this Court is

consistent with the express language of 28 U.S.C. § 2255, which provides that a person in

custody "may move the court which imposed the sentence" for relief.  This conclusion also

comports with the holdings of other courts to have considered the issue.  *See United States v.*

*Cottom*, 6:15-CR-06054 EAW, 6:21-CR-06067 EAW, 2021 WL 3046643, at *2 (W.D.N.Y. July

20, 2021) (citing cases holding that notwithstanding a transfer of jurisdiction over supervised

release, the court that originally imposed sentence is the proper forum to address the § 2255

motion).

Therefore, as this Court imposed sentence on Mr. Vergara, it is appropriate for this Court

to address his § 2255 Motion challenging the length of his supervised release term.

## III.    Statute of Limitations

A one-year limitations period applies to § 2255 motions.  28 U.S.C. § 2255(f).  The

limitations period begins to run from the latest of:

> (1) the date on which the judgment of conviction becomes final;
>
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
>
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f)(1)–(4).  Mr. Vergara's Motion is untimely measured from the date his

conviction became final.  Judgment was entered on the docket on January 12, 2017.  (Doc. 71.)

The deadline for filing a notice of appeal was fourteen days after entry of judgment, or January 26, 2017. Fed. R. App. P. 4(b)(1)(A). Because he did not appeal his conviction and sentence, Doc. 77 at 2, his conviction became final on January 26, 2017. *See Moshier v. United States*, 402 F.3d 116, 118 (2d Cir. 2005) (explaining that when a defendant does not file an appeal, the judgment becomes final when the time for filing an appeal expires). As Mr. Vergara is deemed to have filed his § 2255 Motion on May 28, 2022, his Motion is clearly untimely under § 2255(f)(1). Mr. Vergara does not assert that government action prevented the timely filing of his § 2255 Motion. Nor does he assert a claim of a newly recognized right that has been made retroactively applicable to claims on collateral review. Therefore, § 2255(f)(2) and (3) do not apply.

Mr. Vergara appears to assert that his Motion should be deemed timely under § 2255(f)(4). He explains in his Motion that his attorney advised him that he could not appeal his sentence. (Doc. 77 at 11.)[3] Mr. Vergara states that he "started to get mail at [his] house about [his] cases being vacated," but that his "probation lawyer" advised him that he could not appeal. (*Id.*) He notes that he learned of the potential effect of his vacated convictions on his career offender status during supervised release violation proceedings in January 2022. (*Id.*) Finally, he states his belief that he had to file his "appeal"[4] by March 18, 2022, which is one year

---

[3] Mr. Vergara incorrectly states that the "judge had sentenced [him] above [the] statutory maximum." (Doc. 77 at 11.) To the extent that he is referring to the 40-month term of imprisonment he received, the statutory maximum for the offense of conviction was 20 years. *See* 21 U.S.C. § 841(b)(1)(C). Given that his § 2255 Motion seeks relief only as to supervised release, it is more likely that Mr. Vergara is asserting that he received a term of supervised release exceeding the statutory maximum. However, his offense of conviction required a minimum three-year term of supervised release and a maximum life term of supervised release. *Id; United States v. Diaz-Bautista*, 20-CR-433 (WFK), 2024 WL 2772936, at *3 (E.D.N.Y. May 30, 2024) (citing *United States v. Brooks*, 889 F.3d 95, 102 (2d Cir. 2018)).

[4] Because the time for a direct appeal had long since expired by 2021, the Court interprets Mr. Vergara to mean that he had one year from the date his last conviction was vacated to file a § 2255 Motion. This Report and Recommendation addresses the issue in Part III.A below.

9

after his "last case was vacated [on March 18, 2021.]"  (*Id.*)  He filed his § 2255 Motion in May

2022, explaining that the timing of the filing was due to the lack of assistance from his attorney.

Therefore, Mr. Vergara essentially requests that his Motion be deemed timely because: (1) the

predicate convictions for his career offender classification were vacated after sentencing; (2) he

did not learn of the vacated convictions until January 2022; and (3) his attorney did not assist

him to file a timely habeas motion.

### A.    28 U.S.C. § 2255(f)(4) and *Johnson v. United States*

In *Johnson v. United States*, 544 U.S. 295 (2005), the Supreme Court held that vacatur of

a predicate state conviction constitutes a new "fact" under § 2255(f)(4), triggering a renewed

one-year limitations period in which to seek collateral review of a federal sentence.  *Id.* at 302,

308.  But a petitioner may only take advantage of this provision if he "has shown due diligence

in seeking the [vacatur] order."  *Id.* at 302.  *Johnson* explained that "diligence can be shown by

prompt action on the part of the petitioner as soon as he is in a position to realize that he has an

interest in challenging the prior conviction with its potential to enhance the later sentence."  *Id.* at

308.  The date on which the federal judgment is entered is presumptively the date on which the

duty of diligence is activated.  *Id.* at 309.

This Court has previously held that a defendant was not entitled to relief under *Johnson*

based on a vacated state conviction even when he had filed his § 2255 Motion within one year of

the vacatur of the state conviction.  *Anderson*, 2019 WL 10371607, at *4–5, *report and*

*recommendation adopted*, 2020 WL 2847525 (D. Vt. June 2, 2020).  Like Mr. Vergara's case,

*Anderson* concerned a conviction vacated due to the misconduct of forensic chemist Sonja Farak.

The relevant conviction was vacated on April 5, 2018 and Anderson filed his § 2255 Motion on

April 3, 2019.  *Id.* at *3, 4.  Applying *Johnson*, the Court held that Anderson's duty of diligence

was triggered on April 1, 2016, the date the Massachusetts Attorney General's Office issued its report revealing that Farak's misconduct dated back to "late 2004 or early 2005." *Id*. at \*3, 5 ("On that date, Anderson was in a position to realize that he ha[d] an interest in challenging the prior conviction." (internal quotation marks omitted)). Although Anderson filed his § 2255 Motion within one year of the vacatur of the conviction, the Court noted that Anderson "failed to file any papers until September 20, 2017, over 17 months after the April report was issued, and he ha[d] not alleged any facts demonstrating that he acted diligently during those 17 months." *Id*. at \*5. Therefore, Anderson's motion was deemed untimely.

Mr. Vergara's § 2255 Motion is untimely to the extent that it relies on the vacated conviction related to the Farak misconduct. Judgment was entered in his federal case on January 12, 2017, and his conviction became final on January 26, 2017. Like Anderson, Mr. Vergara's conviction related to Farak's misconduct was vacated on April 5, 2018. Although his duty of diligence arose on April 1, 2016, *Anderson*, 2019 WL 10371607, at \*5, Mr. Vergara appears not to have taken any action to challenge this conviction between entry of judgment in the federal case on January 12, 2017 and the April 5, 2018 vacatur order. He filed this § 2255 Motion more than four years later in May 2022. Therefore, the Motion is untimely under *Johnson*.

To the extent that Mr. Vergara relies on the conviction vacated on March 18, 2021 related to the Dookhan misconduct, the Motion is also untimely. To determine when the duty of diligence was triggered in cases related to Ms. Dookhan, the Court briefly reviews the notice procedures implemented by the Massachusetts courts related to convictions affected by Dookhan's misconduct. In the wake of the scandal involving Ms. Dookhan, the Massachusetts courts developed a protocol to adjudicate the "potentially more than 20,000 relevant Dookhan defendants." *Bridgemen v. District Attorney*, 67 N.E.3d 673, 695 (Mass. 2017). The court

ordered the state District Attorneys to file three letters with the county clerk within 90 days of the court's opinion. The first letter would identify all the defendants who are not "relevant Dookhan defendants" because they pleaded guilty to a drug charge before Dookhan signed the relevant drug certification. The second letter would identify all drug convictions that the District Attorney moves to vacate and dismiss with prejudice. *Id*. at 695. The court ordered that after vacatur and dismissal of these drug convictions, "the defendants shall be notified of the action taken." *Id*. at 696. The third letter would identify the drug convictions that the prosecutor is not moving to vacate because there was adequate evidence independent of Dookhan's drug certificate or testimony to permit a conviction at trial. *Id*. The court instructed that no later than 30 days after the expiration of the 90-day period to send the letters, the District Attorneys were required to send an additional notice to defendants identified in the third letter to advise them of the decision not to vacate their convictions and to inform them of a simplified process to move for a new trial. *Id*. at 697.

The relevant state court docket in Mr. Vergara's case reflects that on March 17, 2021, his drug conviction was reclassified from the third category of cases to the second category of cases, i.e., his case would be vacated and dismissed with prejudice. The docket further reflects that his conviction was vacated and dismissed on March 18, 2021. (Doc. 79-2 at 4.) Mr. Vergara does not specify when he received notice that his conviction would be vacated. He notes in his Motion that he "started to get mail at [his] house about [his] cases being vacated" (Doc. 77 at 11), but he does not identify the timeframe of this notice. Mr. Vergara further states that his attorney informed him that his Massachusetts cases were not affected by the Farak/Dookhan misconduct, but that Mr. Vergara "did not believe him." (*Id*. at 8.) Therefore, Mr. Vergara was aware at some point prior to the vacatur that he might have a viable challenge to his conviction.

Under the protocol established in *Bridgeman*, all relevant notices pertaining to affected convictions were required to be sent within 120 days of the court's January 18, 2017 decision, or approximately May 18, 2017. Accordingly, I find that Mr. Vergara's duty of diligence under *Johnson* was triggered on May 18, 2017. Mr. Vergara does not appear to have taken any action with respect to the Dookhan-related conviction between January 12, 2017 (date of entry of judgment in the federal case), May 18, 2017 (date by which all notices were sent to defendants affected by the Dookhan misconduct) and vacatur of the conviction on March 18, 2021. Therefore, he has not established the due diligence required under *Johnson*. Furthermore, even if the Court were to assume that the timeliness of his § 2255 Motion should be measured from March 18, 2021, the Motion was filed more than one year later in May 2022 and remains time-barred.

### B.    Equitable Tolling

The statute of limitations may be subject to equitable tolling, which "applies only in the rare and exceptional circumstance[ ]." *Smith v. McGinnis*, 208 F.3d 13, 17 (2d Cir. 2000) (per curiam) (alteration in original) (internal quotation marks omitted). Equitable tolling is appropriate only if the movant shows "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstances stood in his way and prevented timely filing." *Jenkins v. Greene*, 630 F.3d 298, 302 (2d Cir. 2010) (emphasis and internal quotation marks omitted); *see also Harper v. Ercole*, 648 F.3d 132, 137 (2d Cir. 2011) (explaining that the movant must show not only exceptional circumstances, but that "those circumstances caused him to miss the original filing deadline").

There is no indication in the record that Mr. Vergara took any action to challenge either of the Massachusetts convictions after his duty of diligence arose with entry of the federal

judgment in 2017. He asserts that he unsuccessfully sought the assistance of his attorney after he learned during his federal supervised release proceedings in January 2022 that his "last case was vacated [March 18, 2021]." (Doc. 77 at 11.) However, by that point it was over four years since his duty of diligence under *Johnson* had been triggered with respect to the conviction. In any event, Mr. Vergara's unsubstantiated explanations pertaining to events in 2022 are insufficient to establish exceptional circumstances that caused him to miss the filing deadline for his § 2255 Motion.

**IV.    Merits of the § 2255 Motion**

Separate from its untimeliness, the § 2255 Motion does not raise any meritorious claims. Mr. Vergara first contends that this Court lacked jurisdiction to impose a five-year term of supervised release. He further asserts that by law he could receive no more than three years of supervised release. (Doc. 77 at 4–5.) As explained above, Mr. Vergara's offense of conviction mandated at least three years and up to a life term of supervised release. 21 U.S.C. § 841(b)(1)(C). Mr. Vergara signed a plea agreement in which he acknowledged that he could receive "up to lifetime supervised release with a mandatory minimum of 3 years." (Doc. 48 at 1, ¶ 2.)

Second, Mr. Vergara appears to claim that the vacatur of the two state convictions meant that he was no longer a career offender and therefore should have received only three years of supervised release. However, the term of supervised release in this case was not dependent on his career offender status. The statute prescribes supervised release of three years to life without regard to whether the defendant is a career offender. 21 U.S.C. § 841(b)(1)(C).

Third, Mr. Vergara contends that he should not have received a 24-month sentence on the supervised release violation in the District of Massachusetts because his Guidelines range was

15–21 months.  (Doc. 77 at 10.)  Not only is it permissible for the district court to impose a

sentence above the Guidelines range but no greater than the statutory maximum, this Court

should not address what is essentially an appeal of a sentence imposed in another district with

jurisdiction over Mr. Vergara's supervised release.  Similarly, this District is not the proper

forum to address Mr. Vergara's potential claim that he received ineffective assistance of counsel

during supervised release violation proceedings in the District of Massachusetts.

Finally, even if Mr. Vergara's § 2255 Motion were timely, the Court cannot grant him the

relief he requests.  Mr. Vergara ultimately requests that the Court "resentence [him] to 3 year[s]

supervised release and release [him]."  (Doc. 77 at 12.)  As noted above, in connection with

federal supervised release proceedings in the District of Massachusetts, Judge Mastroianni

sentenced Mr. Vergara on March 21, 2022 to 24 months' imprisonment with no term of

supervision to follow.  *Vergara*, No. 3:19-cr-30012, ECF No. 58.  After the First Circuit

remanded the case for resentencing, on September 15, 2023, Judge Mastroianni again sentenced

Mr. Vergara to a 24-month term of imprisonment with no supervised release to follow.  *Id.*, ECF

No. 115.  Therefore, as Mr. Vergara is no longer subject to supervised release, the Court cannot

grant his requested relief.

## <u>Conclusion</u>

For the reasons explained above, I recommend that the government's Motion to Dismiss

(Doc. 79) be GRANTED and Mr. Vergara's § 2255 Motion (Doc. 77) be DISMISSED as

untimely.

Because the Motion and other files and records in this case "conclusively show that [Mr.

Vergara] is entitled to no relief," I also recommend that an evidentiary hearing on the Motion is

not necessary.  28 U.S.C. § 2255(b).  I further recommend that the Court decline to issue a

certificate of appealability because Mr. Vergara has not "made a substantial showing of the

denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Generally, a movant meets this burden

by demonstrating that "reasonable jurists could debate whether . . . the [motion] should have

been resolved in a different manner or that the issues presented [a]re adequate to deserve

encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal

quotation marks omitted). Mr. Vergara has not satisfied this burden.

     Dated at Burlington, in the District of Vermont, this 20th day of August 2024.

                                */s/ Kevin J. Doyle*
                                Kevin J. Doyle
                                United States Magistrate Judge


     Any party may object to this Report and Recommendation within fourteen days after service thereof, by filing with the Clerk of the Court and serving on the Magistrate Judge and all parties, written objections that shall specifically identify those portions of the Report and Recommendation to which objection is made and the basis for such objections. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); L.R. 72(c). Failure to timely file such objections "operates as a waiver of any further judicial review of the magistrate's decision." *Caidor v. Onondaga Cnty.*, 517 F.3d 601, 604 (2d Cir. 2008) (quoting *Small v. Sec'y of Health & Hum. Servs.*, 892 F.2d 15, 16 (2d Cir. 1989)).